Phyllis GALLUN, Plaintiff,

v.

Otis R. BOWEN, etc., Defendant.

No. 86–6081–Civ.

United States District Court,
S.D. Florida,
Miami Division.

July 18, 1986.

Lyle Lieberman, Miami, Fla., for plaintiff.

David Lichter, Asst. U.S. Atty., Miami, Fla., for defendant.

## MEMORANDUM DECISION

SCOTT, District Judge.

Plaintiff Phyllis Gallun brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final determination by the Secretary of Health and Human Services ("Secretary") denying Plaintiff's application for federal disability insurance benefits. Plaintiff now moves for summary judgment and defendant cross-moves for judgment on the pleadings.

### PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on March 19, 1985, alleging disability commencing February 20, 1985.[1] This application was denied on June 25, 1985. Plaintiff requested an administrative hearing which was held on August 15, 1985. The Administrative Law Judge ("ALJ") considered the claims de novo and on September 4, 1985, found that claimant was not under a disability. The Appeals Council denied review and it was appealed to this Court.

### FACTS

Phyllis Gallun was born on October 15, 1927. She was fifty-seven years old at the time of the administrative hearing. Mrs. Gallun has a high school education and has past relevant work experience as a house parent and a co-owner/store clerk of a wig shop.

Mrs. Gallun has not engaged in substantial gainful activity since March 14, 1985. She claims she is disabled because of a deteriorated disc and severe back pain.

The medical evidence[2] may be summarized as follows. Dr. Michael D. Schwartz treated Phyllis Gallun from July 27, 1984 through September 11, 1984. Dr. Schwartz reported that Mrs. Gallun was hospitalized in 1982 and at that time developed a lower back syndrome. X-rays taken during her hospitalization revealed a deteriorated disc in her lower back. There was no evidence of trauma to Mrs. Gallun's spinal column. Dr. Schwartz's report indicates that claimant suffers from parasthesia and numbness bilaterally in the dermatone area between L4 and L5, particularly on the left side radiating into her left leg. Dr. Schwartz noted that the pain is deep. A sensory, motor and reflex change was found in Mrs. Gallun's left leg and there has been a decrease in the patellar achille reflex. No decrease in grip strength was noted. Dr. Schwartz stated that Mrs. Gallun walks with a gait abnormality favoring her left leg. X-rays revealed disc compression, posterior jamming, and loss of interrosseous spacing between L3, L4, and L5, resulting in a sciatic neuritis.

A chiropractic orthopedist, Dr. Bruce I. Browne, also submitted a medical report. Physical examination revealed thoracolumbar extension with moderate lower lumbar pain. All other movements were noted as unremarkable. An orthopedic examination revealed a negative straight leg raise bilaterally although Mrs. Gallun exhibited slight right ilium pain after the right straight leg testing was performed. Soto Hall and Linders test were both negative. Hoover's test for malingering, Laquerre and Fabre Patricks tests were also negative. Right Yeomans maneuver was positive. Dr. Browne noted that palpation revealed moderate pain in the peri-sacrococcygeal region. Minimal to slight pain in the right and left gluteal muscle and L3 through L5 interspinous regions was also noted. A neurologic examination revealed all deep tendon reflexes to be + 2 Wexler with Plantar reflexes down pointing. Tromners sign and Valsalva maneuver was not present. Lumbar X-rays revealed grade I L4 spondylolisthesis and an in-

1. During the administrative hearing, Plaintiff's counsel amended the alleged onset date to March 14, 1985.

2. Medical evidence in addition to that before the ALJ was received by the Appeals Council upon the plaintiff's request for review by the Council. Under 42 U.S.C. § 405(g), it is the "final deci-

sion of the Secretary" that this Court is to review. Since the refusal of the Appeals Council to review is part of the Secretary's final decision, this Court will consider the additional medical evidence before the Appeals Council that was not considered by the ALJ.

creased lumbar lordosis. Dr. Browne treated Mrs. Gallun with spinal manipulation, physiotherapeutics and orthomolecular therapy. In conclusion, Dr. Browne opined that Mrs. Gallun was mildly improved but was still suffering intermittent minimal to moderate discomfort.

The Social Security Administration referred Mrs. Gallun to Dr. Edward F. Spievak, an orthopedic surgeon, for consultation. An examination revealed that Mrs. Gallun's tandem walking was unbalanced. The examination also revealed that her heel-and-toe walk was very unbalanced. Dr. Spievak noted that Mrs. Gallun required no assistive device for ambulation. Muscle testing of claimant's hip flexors, knee extensors, flexors, extensors of the foot including inverts, everts, and extensor hallucis longus were bilaterally equal and graded at three. Dr. Speivak noted that cervical spine range of motion showed lateral flexion at 40° bilaterally and forward backward flexion at 30° bilaterally. Range of motion of the lumbar spine showed forward flexion of 60° and lateral flexion of 20° bilaterally. X-rays revealed generalized osteopenia and degenerative spondylolisthesis at L3 through L5.

On September 5, 1985, after Dr. Spievack submitted his initial report with the foregoing findings, he reported that he had not been provided any of Mrs. Gallun's prior medical records before his consultative examination in April 1985. After examining the record of the CT Scan taken in September 1984, Dr. Spievack changed his diagnosis to degenerative spondylolisthesis, causing some spinal encroachment. Dr. Spievack opined that Mrs. Gallun's impairment was equal to that of a listed impairment, and that she had a medically determinable impairment which reasonably could cause her symptoms of pain.[3]

Dr. Jerome Rotstein, a Board-certified internist and rheumatologist, has been Mrs. Gallun's treating physician. Dr. Rotstein reported that Mrs. Gallun had lumbar pain despite a dependence on Percocet. She had paravertebral muscle spasms, limited lumbar flexion and hyperextension, leg strength reduced by almost half, very weak reflexes, and sensory loss. In Dr. Rotstein's opinion, Mrs. Gallun is limited to a maximum exertional level including only daily self care.

Dr. Rotstein reported that Mrs. Gallun has pain on standing or sitting. Her reflexes are depressed in the lower extremities and her strength is decreased. There is mild atrophy of the thighs and calfs bilaterally. On CT Scan and X-ray, Dr. Rotstein found definite spinal stenosis. He stated that Mrs. Gallun has spinal stenosis with severe pain, and that she has problems with walking and sitting.

Dr. Rotstein reported that Mrs. Gallun was limited to lifting 5–10 pounds on few occasions during an 8 hour period. She is limited to 4 hours standing and walking (2 hours without interruption) and her ability to sit for prolonged periods is also limited. Mrs. Gallun is unable to climb, stoop, crouch, kneel, or crawl. She is unable to perform push/pull activity.

During the period of May 21, 1982 through February 26, 1985, Dr. Rotstein examined Mrs. Gallun on three occasions. He diagnosed spinal stenosis and multiple degenerated discs. He observed Mrs. Gallun's decreased range of motion and pain. He conducted X-ray studies. Mrs. Gallun was medicated with Percocet, Naprosyn, and Indocin for pain and limited range of motion. Dr. Rotstein considered her pain to be moderately severe and her complaints were termed credible and consistent with the diagnosis. He stated that the medical signs and laboratory findings showed the existence of a medical impairment which could reasonably be expected to produce the pain and other alleged symptoms. Dr. Rotstein reported that Mrs. Gallun's condition had existed at the same level for two years and would continue unless she underwent surgery. He opined that Mrs. Gallun has a vertebrogenic disorder with pain, muscle spasm, and significant limitation of

---

3. This medical evidence was received by the Appeals Council upon Mrs. Gallun's request for review by the Council and was not considered by the ALJ.

motion of the spine with appropriate radicular symptoms.

At the hearing, Mrs. Gallun testified that her back impairment has intensified over the past five years. She uses a TENS unit for pain control. Mrs. Gallun also testified that she can walk only across a parking lot before her pain is intense. She stated that the pain comes out of nowhere with unbearable force. Her daily activities consist of reading, sleeping, and watching television. She has not driven a car in at least five years. Mrs. Gallun stated that she could not perform sustained work for 8 hours or for a 40 hour week. She further testified that she never has relief from pain, and it has affected her concentration, and her sleeping. Her husband does the household chores.

## DISCUSSION

In reviewing a denial of Social Security disability benefits, this Court's function is to determine whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Substantial evidence in this context is "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *NLRB v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, 665 (1939), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, 140 (1938), *accord Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir. 1981).

■ In order to meet its responsibility of ascertaining whether substantial evidence supports the Secretary's findings, this Court must consider: "(1) objective medical facts *or* clinical findings; (2) diagnoses of examining physicians' (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [a spouse], other members of the family, [her] neighbors and others who have observed [her], and (4) the claimant's age, education and work history." *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972). All of these four elements must be considered together and in combination with each other. *Id.*

Mrs. Gallun initially contends that the ALJ's finding that her testimony was not credible is not supported by the evidence. Specifically, she argues that the record shows that her treating physician, Dr. Rotstein, and the Secretary's consultant, Dr. Spievack, reported finding that Mrs. Gallun has both objective clinical signs and laboratory tests showing a medically determinable impairment which could reasonably cause her pain. Mrs. Gallun further argues that the ALJ merely relied on his observation of her during the hearing as his basis for discrediting her testimony.

■ This Court recognizes that in evaluating a claimant's pain, it is impermissible to merely apply a "sit and squirm" index. *Freeman v. Schweiker*, 681 F.2d 727 (11th Cir.1982). In the case at bar, however, the ALJ did not merely rely upon his observation of Mrs. Gallun during the hearing. The ALJ stated that "the substantial weight of the evidence, as well as the Administrative Law Judge's observations of the claimant at the hearing, indicate that her allegations of severe pain, are not corroborated to the degree alleged." (R. 18) Thus, this Court rejects Mrs. Gallun's contention that the ALJ merely relied on his observation of her during the hearing as his basis for discrediting her testimony. However, this Court does accept Mrs. Gallun's contention that the ALJ erred in his finding of credibility because the record demonstrates that Mrs. Gallun's testimony is corroborated by objective clinical signs and medical findings.

The ALJ found that "the objective medical evidence establishes the absence of any significant findings (muscle spasm, sensory or motor loss, leg pain, muscle wasting, etc.) that are typically associated with functionally limiting pain. Although the claimant does have some back pain, the medical evidence, including physical examinations,

demonstrates no disabling pain-related physical or functional limitation." (R. 18). The unrefuted evidence in the record demonstrates the ALJ's error in making this finding.

Mrs. Gallun testified that she could no longer perform her job due to severe pain. Her physician, Dr. Rotstein, stated that Mrs. Gallun has spinal stenosis with severe pain, and that she has problems with walking and sitting. He stated that her complaints were credible and consistent with the diagnosis. Moreover, he reported that the medical signs and laboratory findings showed the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. Additionally, Dr. Spievack, the consultative physician, diagnosed degenerative spondylolisthesis with some spinal encroachment. He opined that Mrs. Gallun had a medically determinable impairment which reasonably could cause her symptoms of pain.

■ This Court determines that there is no substantial evidence in the record to support the ALJ's finding that Mrs. Gallun's testimony was not corroborated by objective medical evidence. To the contrary, Mrs. Gallun's testimony was confirmed by the medical opinions of both her treating physician, Dr. Rotstein, and the consultative physician, Dr. Spievack.

Mrs. Gallun also contends that the ALJ erred in finding that her impairment is not equal to a listed impairment. She further contends that in making this finding, the ALJ failed to accord the proper legal weight due to her treating physician, Dr. Rotstein. This Court agrees.

In reaching his conclusion, the ALJ noted that "Dr. Rotstein has failed to submit specific objective clinical findings substantiating a finding of disability." (R. 16) The evidence in the record, however, does not support such a conclusion. The record demonstrates that Dr. Rotstein based his evaluation of Mrs. Gallun's disability on the requirements of standing, stooping, lifting and walking. His reports demonstrate that he performed physical examinations and

made X-ray studies. Thus, objective clinical findings were, in fact, submitted.

The ALJ also noted that "Dr. Rotstein is not an orthopedic specialist and this [sic] medical opinion of total disability is not supported by claimant's other treating and consultative physicians." (R. 16) To the contrary, Dr. Spievack, the consultative physician, corroborated Dr. Rotstein's medical opinion. After examining the CT Scan, Dr. Spievack, the consultative physician, corroborated Dr. Rotstein's medical opinion. After examining the CT Scan, Dr. Spievack diagnosed degenerative spondylolisthesis with some spinal encroachment. Just as Dr. Rotstein had reported, Dr. Spievack opined that Mrs. Gallun had a medically determinable impairment which reasonably could cause her symptoms of pain. Dr. Spievack also found, as did Dr. Rotstein, that Mrs. Gallun's impairment equalled a listing.

■ The foregoing testimonies of Dr. Rotstein and Dr. Spievack stand uncontradicted. Uncontroverted medical testimony may not be arbitrarily rejected. *Goodley v. Harris*, 608 F.2d 234 (5th Cir.1979). Moreover, unless good cause is shown to the contrary, substantial weight must be accorded to the opinion of the treating physician. *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982).

■ Applying these legal principles to the case at bar, this Court determines that the ALJ erred in his finding that Mrs. Gallun's impairment does not equal a listed impairment. There is simply no substantial evidence in the record to support this finding. To the contrary, both the primary treating physician and the consultative physician found that Mrs. Gallun's impairment equalled a listed impairment.

■ This Court also determines that the ALJ failed to give appropriate weight to the medical opinion of Mrs. Gallun's treating physician, Dr. Rotstein. No good cause was established by the ALJ for not according substantial weight to Dr. Rotstein's testimony. The ALJ's stated reasons for

giving less weight to Dr. Rotstein's opinion do not bear scrutiny. As previously discussed, the record establishes that Dr. Rotstein's medical opinion was based on objective clinical findings and was fully corroborated by the consultative physician, Dr. Spievack.

For all the foregoing reasons, this Court concludes that there is no substantial evidence to support the ALJ's decision and finds that the unrefuted evidence establishes that Mrs. Gallun's impairment equals a listed impairment. This Court is of the opinion that Mrs. Gallun has suffered an injustice. Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion for Summary Judgment is GRANTED.

2. Defendant's Motion for Judgment on the Pleadings is DENIED.

3. The decision of the Secretary is REVERSED.

4. The Secretary is directed to pay benefits from March 14, 1985.